UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMIE LABRANCHE | CIVIL ACTION |
| VERSUS | NO. 15-2280 |
| DEPARTMENT OF DEFENSE, INSPECTOR GENERAL | SECTION "J" (1) |

### ORDER AND REASONS

Before the Court is a Motion to Dismiss filed by Defendant, the Department of Defense, Inspector General ("Defendant"). (*See* Rec. Docs. 11 and 16.) Plaintiff Jamie LaBranche ("Plaintiff"), a pro se litigant, filed suit against Defendant alleging violations of The Inspector General Act of 1978, Title VII, and the Federal Tort Claims Act. (*See* Rec. Doc. 1.) The Department of Defense now seeks dismissal of all of Plaintiff's claims based on lack of subject matter jurisdiction or, alternatively, failure to state a claim. (*See* Rec. Doc. 11.) For the following reasons, the Court GRANTS Defendant's motion and dismisses Plaintiff's complaint, without prejudice, for lack of subject matter jurisdiction.

### BACKGROUND AND PROCEDURAL HISTORY

The following is a brief summary of the facts and allegations discernable from Plaintiff's complaint. Plaintiff was an employee of Goodwill Industries ("Goodwill"),[1] a contractor of the

---

[1] Plaintiff's complaint often states that his employer was "Goodworks"; however, supporting exhibits indicate his actual employer was Goodwill Industries. (*See* Rec. Doc. 1-1 at 2.) The exact name of Plaintiff's employer does not matter for the purposes of this Order and Reasons. The Court proceeds by referring to the employer as "Goodwill."

1

Department of Defense at the Belle Chase Naval Air Station ("the base"). (*See* Rec. Doc. 1-1 at 1.) Concerned that Goodwill was circumventing security protocol on the base and denying its workers due fringe benefits, Plaintiff sent a letter on October 17, 2012, to the Department of the Navy. *See id.* Plaintiff corresponded with employees of Defendant over the following weeks. (*See* Rec. Doc. 1-1 at 29–36.) Plaintiff also apparently sent communications to officials at the U.S. Attorney's Office. (*See, e.g.*, Rec. Doc. 1-1 at 16.) According to Plaintiff, at least one employee of Defendant notified Goodwill of Plaintiff's disclosures at some point in October or early November. (*See* Rec. Docs. 1 at 2 and 1-1 at 78.) On November 16, 2012, Plaintiff filed suit against Goodwill. (*See* Rec. Doc. 1-1 at 12.) On November 19, 2012, Plaintiff sent a letter to a Navy official complaining about a leak of his protected disclosures to Goodwill by an employee of Defendant. *See id.* at 18. On November 30, 2012, Goodwill terminated Plaintiff's employment as an alleged reprisal for Plaintiff's disclosures to Defendant. *See id.* at 12.

Plaintiff's communication with employees of Defendant carried on for some time after. (*See generally* Rec. Doc. 1-1.) In addition to the suit against Goodwill, it appears at some point in late 2012 that Plaintiff communicated with Defendant to initiate a whistleblower reprisal investigation pursuant to 10 U.S.C. § 2409. (*See* Rec. Doc. 1-1 at 28, 36.) While the whistleblower reprisal

2

investigation was ongoing, Plaintiff agreed to a settlement of his suit against Goodwill on April 18, 2013. *See* Rec. Doc. 1-1 at 87–101; *see also LaBranche v. Goodwill*, No. 12-2786, Rec. Doc. 21 (E.D.La. 4/18/2013) (Feldman, J.) (minutes of settlement conference reflecting settlement reached). Plaintiff alleges and references email exhibits to support that he agreed to the settlement at the order of another employee of Defendant, with assurances that Defendant would carry on the reprisal investigation. (*See* Rec. Doc. 1 at 2–3.)

On May 15, 2013, the office of the Naval Inspector General sent a notice to Plaintiff stating that it was closing the matter after investigative authorities concluded upon preliminary inquiry that appropriate security protocol was followed at the base. (*See* Rec. Doc. 1-1 at 23.) In June 2014, Defendant released a report of its whistleblower investigation, concluding that Goodwill terminated Plaintiff's employment for reasons other than the protected disclosures Plaintiff made to Defendant. (*See* Rec. Doc. 1-1 at 129–37.)

On or around July 1, 2014, Plaintiff complained to Defendant through a "Defense Hotline" that -- in contravention of assurances that Plaintiff would be protected from reprisal -- Defendant's employee(s) had released Plaintiff's identity to Goodwill, which led to Goodwill's retaliatory termination. (*See* Rec. Doc. 1-1 at 159.) The "Quality Assurance and Standards Internal Review

3

Division" appears to have subsequently interviewed Plaintiff, reviewed the documents and information provided by Plaintiff, and completed a report concluding that no misconduct by employees of Defendant occurred. (*See* Rec. Doc. 1-1 at 159–60.) While significant portions of the November 3, 2014, report are redacted, it appears the Internal Review Division concluded that, at least, Plaintiff's identity was not directly released to Goodwill and that "although no one should guarantee" against reprisal, any such assurance made to Plaintiff by an employee of Defendant would not constitute misconduct. *See id.*

While not mentioned in his initial complaint, Plaintiff subsequently filed an official tort claim with Defendant on December 28, 2014. (*See* Rec. Doc. 17 at 12.) The claim cites October 24, 2012 as the date of the tort. *See id.* Defendant disputes that Plaintiff actually submitted the claim and has submitted a declaration of one its employees stating that the employee has conducted a diligent search, yet was unable to track down the December 28, 2014, claim. (*See* Rec. Doc. 22-1.) Plaintiff filed the instant suit on June 23, 2015. (*See* Rec. Doc. 1.)

On August 3, 2015, before Defendant answered Plaintiff's complaint, Plaintiff filed a motion for summary judgment. (*See* Rec. Doc. 6.) Before answering or responding to Plaintiff's motion for summary judgment, Defendant filed the instant motion to dismiss. (*See* Rec. Doc. 11.) On September 16, 2015, the Court

4

issued an order that it would consider the issue of subject matter jurisdiction before considering the motion for summary judgment. (*See* Rec. Doc. 16.) On November 23, 2015, Plaintiff moved for leave to file an amended complaint to add from United States Attorney Jim Letten, Assistant United States Attorney Sharon Smith, and the Department of Justice as defendants. (*See* Rec. Doc. 25.) Finding the amended complaint futile for lack of subject matter jurisdiction, the magistrate denied Plaintiff's motion to amend. (*See* Rec. Doc. 29 at 3.)

## STANDARD OF REVIEW

As a threshold matter, the Court notes that it interprets pleadings and briefs of pro se litigants liberally "to afford all reasonable inferences which can be drawn from them." *In re Tex. Pig Stands, Inc.*, 610 F.3d 937, 941 n.4 (5th Cir. 2010). Rule 12(b)(1) motions allow parties to challenge the subject matter jurisdiction of a district court to hear a case. FED. R. CIV. P. 12(b)(1). A district court can assess whether it has subject matter jurisdiction based upon any of the following: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *See Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof rests on the party asserting jurisdiction. *See id.* In assessing a Rule 12(b)(1) motion, a district court may consider

matters of fact that appear in dispute, but should grant the motion only if it appears the party asserting jurisdiction can prove no set of facts that would establish jurisdiction. *See id.*

## DISCUSSION

While Plaintiff makes claims under The Inspector General Act, Title VII, and the Federal Tort Claims Act, only the tort claim merits detailed discussion. Neither the Inspector General Act nor Title VII give Plaintiff a cause of action against Defendant in this case. The plain language of the Inspector General Act makes clear that it protects only employees of certain federal government establishments, not employees of federal contractors. *See* 5 U.S.C. App. §§ 7(a)-(b), 12(2). Furthermore, nothing in the plain language of Inspector General Act suggests that the United States has waived its sovereign immunity. *See Williams v. McCausland*, 791 F. Supp. 992, 1001 (S.D.N.Y. 1992).[2]

The plain language of Title VII also makes clear that it does not provide Plaintiff with grounds for relief against Defendant in this case. Again, Title VII provides a cause of action against *employers*. *See* 42 U.S.C. §§ 2000e-2, 2000e-16. Furthermore, even if Defendant had been Plaintiff's employer, nothing indicates that

---

[2] Plaintiff's brief in opposition to Defendant's motion to dismiss raises the argument that Defendant also violated 10 U.S.C. § 2409. (*See* Rec. Doc. 17 at 2.) While that statute does protect whistleblowing employees of federal contractors from retaliation, it does not afford such employees with a cause of action against the United States. *See* 10 U.S.C. § 2409(c)(2). Instead, it affords a whistleblowing employee who has exhausted administrative remedies with a cause of action against the retaliating federal contractor. *See id.*

6

Defendant took retaliatory actions against Plaintiff on account of "race, color, religion, sex, or national origin." *Id.* The Court does not have subject matter jurisdiction under either the Inspector General Act or Title VII.

What remains is Plaintiff's claim under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). A tort claim against the United States must be presented to the appropriate federal agency "within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, or notice of final denial of the claim by the agency to which it was presented. 28 U.S.C. § 2401(b). Should the appropriate agency not make final disposition of the claim within six months of the claim being filed, the claimant has the option of deeming administrative remedies exhausted and bringing suit in district court. *See* 28 U.S.C. § 2675(a); *see also Ramming*, 281 F.3d at 162. A claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *See Ramming*, 281 F.3d at 162 (internal quotation omitted).

In this case, Plaintiff alleges the tort -- defendant revealing to Goodwill that he had made protected disclosures to Defendant -- occurred October 24, 2012. *See* Rec. Doc. 17 at 12. A November 19, 2012, communication from Plaintiff to a Navy official reflects Plaintiff's purported knowledge that an employee of Defendant had leaked to a supervisor at Goodwill Plaintiff's

7

disclosures to Defendant. (*See* Rec. Doc. 1-1 at 18.) Even assuming the date of injury actually occurred on November 30, 2012 (when Plaintiff's employment was terminated)[3] and even assuming Plaintiff did actually file an administrative tort claim with Defendant, the claim was not filed until December 28, 2014--more than two years after the date of the injury.[4] Because it is reasonable to conclude that Plaintiff's claim accrued before December 28, 2012, the Court

---

[3] The Court notes that Plaintiff makes reference to Defendant's involvement in his lawsuit against Goodwill. Other than the conclusory allegation that an employee of Defendant caused Plaintiff to settle his lawsuit, the complaint and attached exhibits provide no further factual allegations suggesting Defendant in any way "ordered" Plaintiff to settle his lawsuit against Goodwill. (Rec. Doc. 1 at 2; *see also* Rec. Doc. 1-1 at 101, 95-122.) The Court concludes that it is not reasonable to infer from Plaintiff's complaint that he alleges a tort as to defendant's alleged involvement in his lawsuit against Goodwill. If anything, the email exhibits included in the complaint demonstrate that Plaintiff had an ongoing awareness of the injury giving rise to a possible tort claim against Defendant. (*See, e.g.*, Rec. Doc. 1-1 at 102 (employee of Defendant asking Plaintiff on October 16, 2013, to notify Defendant in the case he decides to pursue a claim against Navy Civil contracting officer), 108 (Plaintiff asking for update on January 31, 2014, and noting his awareness of and concern about filing deadlines), and 111 (Plaintiff advising Defendant on February 27, 2014, of his intent to "move in" on Civil Navy contracting officer.)) Furthermore, it is not apparent that Plaintiff's alleged December 28, 2014, administrative claim complained about the settlement. Accordingly, the Court finds it reasonable to conclude that Plaintiff's claim accrued at the latest on November 30, 2012.

[4] Even assuming for the sake of argument that Plaintiff's July 1, 2014, hotline complaint constituted the filing of a tort claim within the two year period of limitation, Plaintiff became aware of the end result of that complaint on December 19, 2014, yet did not file the instant complaint until June 23, 2015. (*See* Rec. Docs. 1 and 1-1 at 158-60.) While close, that means that more than six months passed between Plaintiff becoming aware of Defendant "denying" the merits of his claim and Plaintiff filing suit. *See* 28 U.S.C. § 2401(b). It may be that Plaintiff had the good faith belief for months or even years following the accrual of his claim that a tort claim against Defendant was unnecessary to vindicate his rights, since he was pursuing other means of protecting his interests. (*See* Rec. Docs. 1 at 2 and 1-1 at 28 (describing plaintiff's lawsuit against Goodwill and defendant's whistleblower reprisal investigation.)) However, even if equitable factors existed to suggest a judge-made tolling of the limitation period might be appropriate in this case, district courts do not have equitable authority when it comes to statute of limitations as they apply to private citizen suits against a sovereign. *See Ramming*, 281 F.3d at 165.

does not have subject matter jurisdiction over Plaintiff's tort claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Dismiss* **(Rec. Doc. 11)** is **GRANTED** as to Defendant's challenge that the district court lacks subject matter jurisdiction over this case; Plaintiff's complaint is **DISMISSED** without prejudice.

New Orleans, Louisiana, this 12th day of February, 2016

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE